UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JODY LaROCK o/b/o M.K.

        Plaintiff,

     v.                            **REPORT AND RECOMMENDATION**
                                      **10-CV-1019 (NAM/VEB)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.Introduction

      In December 2006, Plaintiff Jody LaRock, on behalf of her minor child, MK, filed

an application for Supplemental Security Income ("SSI") under the Social Security Act

("the Act"). Plaintiff alleges MK has been disabled since May 1, 1997, due to various

mental impairments, including attention deficit hyperactivity disorder ("ADHD"), low

intellectual functioning, depression, anxiety, and a learning disorder. The Commissioner

of Social Security ("Commissioner") denied Plaintiff's application.

      Plaintiff, through her attorney, Mr. Lawrence D. Hassleler, commenced this action

on August 24, 2010, by filing a Complaint in the United States District Court for the

Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the

Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

      On February 18, 2011, the Honorable Norman A. Mordue, Chief United States

District Judge, referred this case to the undersigned for a Report and Recommendation

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II.Background

      The relevant procedural history may be summarized as follows: Plaintiff, on

behalf of her minor child, MK, initially applied for SSI on December 14, 2006, alleging

disability beginning on May 1, 1997 (R. at 33).[1] Plaintiff alleged disability due to various

mental impairments, including ADHD, low intellectual functioning, depression, anxiety,

and a learning disorder. The application was denied. Id. A subsequent application was

filed on February 9, 2007[2] (R. at 100-03). This application was again denied (R. at 59-

66). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") (R.

at 70). A video hearing was held between Canton, New York, and Syracuse, New York,

on July 21, 2009, before ALJ Elizabeth W. Koennecke (R. at 8-32). MK, the minor child,

represented by counsel, appeared and testified (R. at 11-18). Plaintiff, MK's mother,

also testified (R. at 13-32). On October 19, 2009, ALJ Koennecke issued a decision

finding MK not disabled (R. at 37-50). Plaintiff filed a request for review of that decision

(R. at 6). The ALJ's decision became the Commissioner's final decision on July 28,

2010, when the Appeals Council denied Plaintiff's request for review (R. at 1-5).

Plaintiff, through counsel, timely commenced this action on August 24, 2010.

(Docket No. 1). The Commissioner interposed an Answer on October 6, 2010. (Docket

No. 8). Plaintiff filed a supporting Brief on November 22, 2010. (Docket No. 12). The

Commissioner filed a Brief in opposition on November 30, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the

Northern District of New York on September 12, 2003, this Court will proceed as if both

parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the

---

[1] Citations to "R" refer to the Administrative Transcript. (Docket No.10).
[2] "Because the second application was filed within the one year period to be re-opened for any reason, the [ALJ] f[ound] that the [February 2007] claim was protectively filed on December 14, 2006" (R. at 37).
[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

Commissioner's motion be granted, Plaintiff's motion be denied, and that the Commissioner's decision denying disability benefits be affirmed.

### III.Discussion

**A.     Legal Standard and Scope of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

A child is deemed disabled under the Act if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has established the following three-step sequential evaluation to determine whether a child is disabled: first, the ALJ must determine whether the child has engaged in "substantial gainful activity." 20 C.F.R. §416.924(a), (b). If the child has engaged in substantial gainful activity he will be found not disabled. <u>Id.</u> If not, the analysis will continue. At step two, the ALJ must determine whether the child "ha[s] a medically determinable impairment(s) that is severe." §416.924(c). "If you do not have a medically determinable impairment, or your impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, [the ALJ] will find that you do not have a severe impairment(s) and are, therefore, not disabled." <u>Id.</u> Finally, at step three,

the ALJ must determine whether the child "meet[s], medically equal[s], or functionally

equal[s] the listings." § 416.924(d). To functionally equal the Listings, the ALJ must

evaluate six domains: "[a]cquiring and using information; [a]ttending and completing

tasks; [i]nteracting and relating with others; [m]oving about and manipulating objections;

[c]aring for yourself; and, [h]ealth and physical well-being." § 416.926a(b)(1)(i)-(vi). A

child's "impairment(s) is of listing-level severity if [he or she has] 'marked' limitations in

two of the domains . . ., or an 'extreme' limitation in one domain." § 416.92a(d).

Based on the entire record, the Court recommends that the Commissioner's

decision denying disability benefits be affirmed.

**B.    Analysis**

**1.  The Commissioner's Decision**

The ALJ made the following findings with regard to factual information as well as

the three-step process set forth above: the ALJ first noted that MK was born on March

8, 1995, and was therefore a school age child at the time the application was filed, and

an adolescent at the time of her decision (R. at 40). The ALJ then found that MK had

not engaged in substantial gainful activity as of her application date, December 14,

2006. Id.  MK's ADHD, depressive disorder, and learning disorder, were found to be

severe impairments. Id. At step three, the ALJ found that MK's impairments did not

meet or medically equal a Listed impairment. Id. The ALJ afforded the statements from

MK's mother "little weight" (R. at 43). The ALJ then found that none of MK's

impairments functionally equaled the Listings (R. at 41). Specifically, the ALJ found that

MK had no limitations in the moving about and manipulating objects domain (R. at 47-

48). The ALJ also found that MK had less than marked limitations in the five remaining

functional domains (R. at 44-50). Ultimately, the ALJ found that MK was not under a disability at any time from December 14, 2006, the application date, through the date of her decision (R. at 50).

### 2. Plaintiff's Claims:

Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor made in accordance with the applicable legal standards. Specifically, Plaintiff argues that a) the ALJ erred in failing to find MK met Listing 112.05D; b) the ALJ failed to consider specific portions of the record; and c) MK's impairments functionally equaled the Listings. The Court will discuss each argument in turn.

### a) The ALJ's Finding that MK's Impairments Were Not of Listing Level Severity is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred in failing to find that MK met Listing 112.05D, for mental retardation. Plaintiff's Brief, pp. 13-14.

Listing 112.05, for mental retardation, is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1. In order to meet part D of Listing 112.05, a claimant must also establish "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." Id.

The ALJ specifically rejected "any of the mental impairments found in section 112.00 of the listings" based on the opinions from psychiatrist Dr. A. Hameed (R. at 41). Dr. Hameed reviewed the record and found that while MK's impairments were severe, they did not meet or medically equal a Listed impairment (R. at 260-65). The Court finds

that the ALJ's decision is supported by substantial evidence, despite new evidence submitted directly to the Appeals Council.

Defendant argues only that, of the requirements for Listing 112.05D, Plaintiff failed to establish "[a] valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1; Defendant's Brief, pp. 7-10. The Court will therefore limit its discussion to whether the record establishes the necessary IQ score.

In support of her argument, Plaintiff cites to a psychoeducational evaluation completed in November 2008 by Ms. Karen Geer, a school psychologist (R. at 207-11). Plaintiff contends that an IQ test, completed by Ms. Geer meets the Listing 112.05D IQ criterion. Plaintiff's Brief, pp. 13-14. However, contrary to Plaintiff's argument, the relevant IQ test was not completed in November 2008. Instead, the IQ test to which Plaintiff refers was completed in May 2001.

In the November 2008 psychoeducational report, Ms. Geer noted the results of several prior cognitive and educational achievement examinations (R. at 207-09). Included in those results was the May 2001 intellectual examination (R. at 208-09).  At the May 2001 IQ examination, MK received a verbal IQ score of 71, a performance IQ score of 73, and a full scale IQ score of 70. Id. The Court agrees that MK's full scale IQ score of 70 does appear to satisfy the 112.05D IQ requirement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00(D)(9) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, the lowest of these is used in conjunction with listing 112.05."). However, this full scale IQ score of 70 constitutes the only evidence of

7

record that MK had the required IQ to meet Listing 112.05D and was completed at a time when MK was only 6 years old as discussed further below.

Plaintiff argues that, based on this full scale IQ score of 70, the ALJ erred in failing to find that she met Listing 112.05D. However, the record indicates that the psychoeducational report containing this IQ score was submitted directly to the Appeals Council; as a consequence, the ALJ was unable to review this evidence and consider it as a part of his decision. See (R. at 4) (the Appeals Council stated that Exhibit B18E containing "[e]ducation records from the Ogdensburg City School District," was additional evidence it had considered in denying review); (R. at 206-11) (exhibit B18E, records from Ogdensburg City School District, containing the psychoeducational evaluation and the May 2001 IQ test results); (R. at 18) (at the hearing, the ALJ stated she had received 'E' exhibits numbered 1 to 16). Thus, clearly, the ALJ did not err in failing to find Plaintiff met that Listing given these circumstances.

Nevertheless, the Court must review the record in its entirety to determine whether the ALJ's decision remains supported by substantial evidence, despite his inability to consider the psychoeducational report containing the May 2001 IQ test results. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) ("[H]old[ing] that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."). For the following reasons, the Court finds that remand is not warranted.

The Court acknowledges that the record fails to contain a subsequent Wechsler IQ test. However, several sources have diagnosed MK's intellectual functioning to be in

the low average range, and not in the mental retardation range necessary to meet Listing 112.05D. For example, in November 2006, MK underwent a "Woodcock-Johnson Test[] of Cognitive Abilities-Third Edition in order to determine specific strengths and weakness in [MK's] intellectual profile. Results of the intelligence testing found [MK's] overall abilities fell in the low average range" (R. at 195). A letter dated May 2007, from Dr. Louisa Kalsner, noted that "[r]ecent testing ha[d] shown cognitive function in the low average range" (R. at 247). In November 2008, "[t]he Kaufman Brief intelligence Test-2nd Edition (KBIT-2) was administered to obtain a current measure of [MK's] cognitive ability" (R. at 208). Ms. Geer, the school psychologist completing the examination, found that MK's composite IQ score of 78 placed her in the "low average" or "well below average" range (R. at 210, 211). Indeed, the Court could find no indication in the record, other than MK's one IQ test score of 70 that her intellectual functioning was in the mental retardation range.

Importantly, MK's full scale IQ score of 70 was current only through May 2002. At the time MK took the May 2001 IQ test, she was six years old.[4] The Listings acknowledge that the IQ for a child under the age of sixteen may fluctuate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.00(D)(10) (noting that "the results of IQ tests tend to stabilize by the age of 16"). The Listings therefore place restrictions on how long a child's IQ score may be considered "current." Id. Because MK was six at the May 2001 IQ test, her results were "current" for only one year. Id. ("IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above."). Thus, it would be improper for this Court to rely on the 2001 IQ test in evaluating whether MK met Listing 112.05D as of date of her application, December 14, 2006.

---

[4] MK was born on March 8, 1995 (R. at 100).

Based on the foregoing, the Court finds that the record as a whole supports the conclusion that MK's intellectual functioning was in the low average range. Thus, the ALJ's decision remains supported by substantial evidence despite the new evidence submitted directly to the Appeals Council.

### b)  The ALJ Adequately Reviewed the Evidence of Record

Plaintiff argues that the ALJ erred in failing to consider various pieces of medical evidence throughout the record. Plaintiff's Brief, pp. 11-12. Specifically, Plaintiff refers to the following: i) five emergency room visits; ii) the psychoeducational evaluation completed by Ms. Geer; iii) the diagnosis of MK with a separation anxiety disorder; iv) MK's difficulties interacting with others including Dr. Hameed's finding of "marked" limitations in that functional domain; and v) the opinion from MK's therapist, Ms. Robin Einbinder, that MK's behavioral problems were "chronic and severe." Id.

The Court first notes that there is no obligation for the ALJ to discuss every piece of evidence contained in the record, so long "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)). The ALJ specifically considered the following: treatment notes from MK's various medical sources; a November 2006 psychiatric evaluation; a November 2006 psychoeducational evaluation; a 2007 individualized education plan ("IEP"); a teacher questionnaire completed by Ms. Katherine Mathews in August 2007; a March 2009 psychiatric evaluation; a July 2009 letter from MK's therapist, Ms. Einbinder; the opinions from Dr. Hameed, the Social Security Administration ("SSA") non-examining psychiatrist; and Plaintiff's testimony (R. at 41-44). It is clear that the ALJ engaged in a thorough review

of MK's medical and educational history. Nevertheless, the Court will address the various pieces of evidence to which Plaintiff cites.

Plaintiff first argues that the ALJ ignored MK's various trips to the emergency room between April 2006 and January 2009 (R. at 217, 283-313). Plaintiff's Brief, p. 11. Plaintiff contends that MK's five visits to the emergency room "for mental health related problems . . . contradict[ed] [the ALJ's] characterization of [MK] as a child who is doing fine and happy overall." Plaintiff's Brief, p. 11. The Court acknowledges that the ALJ did not specifically refer to these emergency room visits in her decision. However, contrary to Plaintiff's argument, at no point did the ALJ characterize MK as "fine and happy overall." Id. Instead, the ALJ noted that MK "ha[d] a long history of disturbed sleep and symptoms of depression and possible bipolar disease" (R. at 42). Furthermore, it is not clear that all MK's various trips to the emergency room were "for mental health related problems," as argued by Plaintiff. Plaintiff's Brief, p. 11. For example, in April 2006, MK went to the emergency room after being "assaulted by a neighbor" and "diagnosed with a small laceration inside of her mouth as well as bruising to her face and back" (R. at 217). In February 2007, MK was "brought to [the] ER with [complaints] of not sleeping" (R. at 284). Finally, MK's mental health related emergency room visits also appear to be non-severe in nature. For example, MK visited the emergency room in November 2006 (R. at 285-88). The examiner noted complaints of agitation and frustration, however they were found to be only of a mild severity (R. at 287). MK again visited the emergency room in January 2009, this time for depression (R. at 304-06). The examiner found MK's appearance, speech, thought content, and judgment/insight all to be normal

(R. at 305). Thus, the Court finds no reason to remand based on the ALJ's failure to specifically mention MK's various trips to the emergency room.

Plaintiff next argues that the ALJ erred in failing to discuss Ms. Geer's psychoeducational report. Plaintiff's Brief, 11-12. However, as the Court has discussed above, this evidence was submitted directly to the Appeals Council, which the Appeals Council is presumed to have considered in its review of the ALJ decision. Supra Part III.B.2.a; Perez, 77 F.3d at 45 (if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence").  Therefore, clearly, the ALJ did not err in failing to consider this evidence because it was not available to her at the time of her decision.

Plaintiff's third argument is that the ALJ failed to note MK's diagnosis of a separation anxiety disorder. Plaintiff's Brief, p. 12. This is not accurate.  Although the ALJ only cursorily discussed MK's separation anxiety disorder in her discussion of MK's medical history, an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long "the evidence of record permits [the Court] to glean the rationale of an ALJ's decision." Mongeur, 722 F.2d at 1040 (citations removed). Here, the ALJ stated that MK's "difficulty separating from her mother was an issue of concern in the [November 2006 psychiatric] evaluation" (R. at 42). The ALJ also discussed a July 2009 letter written by MK's therapist, Ms. Einbinder R. at 43). In that letter, Ms. Einbinder stated that MK's diagnoses included a separation anxiety disorder (R. at 331, 43). Thus, although the ALJ did not specifically spell out that MK had been diagnosed with a separation anxiety disorder, it is clear to the Court that she considered MK's

difficulties separating from her mother in the decision. The Court therefore declines to recommend remand on this basis.

Plaintiff next contends that the ALJ failed to consider MK's difficulties dealing with others, including Dr. Hameed's opinion that MK had marked limitations in this functional domain. Plaintiff's Brief, p. 12. Plaintiff's argument is meritless. The ALJ specifically noted that Dr. Hameed "concluded, after reviewing the . . . evidence, that the claimant had only one marked functional limitation, in interacting and relating with others" (R. at 42). The ALJ also considered that MK had "thrown a fellow student against a locker." Id. Ultimately, the ALJ found that "[a]lthough the claimant ha[d] a history of difficulties with other youngsters, the record show[ed] that she ha[d] friends and apparently ha[d] no difficulty dealing with others in small groups" (R. at 47); see (R. at 135) (MK's school noted in May 2007 that she "[wa]s a cooperative student. She [wa]s able to work well in pairs or small groups"). Thus, the ALJ acknowledged that MK had some difficulties dealing with others, but was not markedly limited in that functional domain.

Plaintiff's final argument is that ALJ failed to consider the opinion from MK's therapist, Ms. Einbinder, that her problems were "chronic and severe." Plaintiff's Brief, p. 12.  Plaintiff is referring to a letter written by Ms. Einbinder to Plaintiff's work regarding Plaintiff's "required work fare hours" (R. at 330). Ms. Einbinder stated that "[d]ue to the chronic and severe nature of [MK's] current psychiatric and behavioral problems, it [wa]s in [MK's] clinical best interest for her mother to be as available as possible in order to provide structure, supervision and emotional support, and to be available for all medical, psychiatric, counseling appointments and crises for [MK]" (R. at 330). The Court acknowledges that the ALJ did fail to mention this specific opinion from Ms.

Einbinder. However, this letter was clearly not intended for diagnosis or treatment

purposes, but instead appears to be written in request for leniency at Plaintiff's work and

not for the purposes of diagnosis and treatment.  The context of this letter calls into

question the efficacy of relying upon the comment at issue as a medical finding. Thus,

the ALJ's failure to mention this opinion was not error. Furthermore, it is unclear how

this comment would have impacted the ALJ's decision.  For example, the ALJ

recognized that MK "ha[d] a long history of disturbed sleep and symptoms of depression

and possible bipolar disease" (R. at 42). The ALJ also found that several of MK's

impairments were severe, including her ADHD, a depressive disorder, and a learning

disorder (R. at 40), all evidencing a careful and considered decision-making process.

Thus, the Court can find no error in the ALJ's failure to specifically note Ms. Einbinder's

opinion that MK's impairments were chronic and severe.

The Court therefore finds no reason to remand based on this claim.

### c)  The ALJ's Finding that MK Did Not Functionally Equal the Listings is Supported by Substantial Evidence

Plaintiff's final argument is that the ALJ erred in failing to find that MK functionally

equaled the Listings. Plaintiff's Brief, pp. 14-23. Specifically, Plaintiff contends that the

ALJ erred in failing to find MK afflicted with at least a marked limitation in five of the six

functional domains: acquiring and using information; attending and completing tasks;

interacting and relating with others; caring for oneself; and health and physical well-

being. Id.

A finding of a "marked" limitation is appropriate when a child's

. . . impairment(s) interferes seriously with [her] ability to independently
initiate, sustain, or complete activities. [Her] day-to-day functioning may be
seriously limited when [her] impairment(s) limits only one activity or when

14

the interactive and cumulative effects of [her] impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'

20 C.F.R. § 416.926a(e)(2)(i). The ALJ found that MK had no limitations in the moving about and manipulating objects domain (R. at 47-48). The ALJ found that MK had less than marked limitations in the five remaining functional domains (R. at 44-50). For the following reasons, the ALJ's findings are supported by substantial evidence.

Of the opinion evidence, the ALJ relied most heavily on the findings from Dr. Hameed, the SSA non-examining review psychiatrist, and MK's fifth grade teacher, Ms. Karen Matthews[5] (R. at 41, 44). Although the record documents several psychological evaluations, Dr. Hameed and Ms. Matthews were the only sources of record to provide opinions of MK's functioning in the six domains.

In August 2007, Ms. Matthews completed a teacher questionnaire and rated MK's functioning in each of the six domains (R. at 146-152). The questionnaire asked Ms. Matthews to rate MK's functioning on the following scale: no problem; a slight problem; an obvious problem; a serious problem; and a very serious problem. Id. In the acquiring and using information domain, Ms. Matthews stated that MK's functioning ranged from no problem to an obvious problem (R. at 147). Ms. Matthews again found MK's functioning ranged from no problem to an obvious problem in the attending and completing tasks domain (R. at 148). Ms. Matthews found that MK had generally no problem in the interacting and relating with others category (R. at 149). She found no problem in the moving about and manipulating objects domain (R. at 150). Ms. Matthews found that MK's functioning in the caring for herself domain ranged from no

---

[5] Dr. Hameed's opinions were afforded "significant weight" and Ms. Matthews' opinions were afforded "great weight" (R. at 41, 44). No opinions were granted greater weight.

problem to an obvious problem (R. at 151). Ms. Matthews did not identify any medical conditions that impacted MK's health and physical well-being (R. at 152). Thus, at no point did Ms. Matthews opine that MK's functioning rose to a serious problem in any of the functional domains. Her opinions therefore support the ALJ's finding of less than marked limitations in each of the functional domains. See 20 C.F.R. § 416.926a(e)(2)(i) (the ALJ "will find that [the child] ha[s] a 'marked' limitation in a domain when [the child's] impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities").

Dr. Hameed, the SSA consultative psychiatrist, reviewed the record in September 2007 (R. at 260-65). Dr. Hameed found that MK had no limitation in the moving about and manipulating objects domain (R. at 263). Dr. Hameed also found less than marked limitations in the following domains: acquiring and using information; attending and completing tasks; and caring for oneself (R. at 262). The interacting and relating with others domain was the sole area in which Dr. Hameed found that MK was afflicted with marked limitations (R. at 262). Dr. Hameed failed to make a finding in the health and physical well-being domain (R. at 263). Thus, with the exception of the interacting and relating with others domain, Dr. Hameed's opinions support the ALJ's findings.

The Court acknowledges that the ALJ failed to offer a specific explanation as to why Dr. Hameed's opinion of a marked limitation in the interacting and relating with others domain was rejected. However, the ALJ's ultimate finding of less than  a marked limitation in that domain is supported by substantial evidence.

16

When evaluating the interacting with others domain, the ALJ noted that "[a]lthough the claimant ha[d] a history of difficulties with other youngsters, the record show[ed] that she ha[d] friends and apparently ha[d] no difficulty dealing with others in small groups" (R. at 47). This finding is supported by substantial evidence. An individual educational plan noted, in May 2007, that MK "[wa]s a cooperative student. She [wa]s able to work well in pairs or small groups. She w[ould] try hard to please adults" (R. at 135). Although MK's mother indicated at various points throughout the record that MK had only one friend (R. at 23, 125), MK testified that she did indeed have friends and "probably four" at school (R. at 14). MK's mother also indicated in a function disability report that MK generally got along with her siblings and school teachers (R. at 125). Furthermore, as noted above, Ms. Matthews found that MK had generally no problem in the interacting and relating with others category (R. at 149). While Ms. Matthews stated that MK "tend[ed] to isolate herself," she also indicated that it had not been necessary to implement behavior modification strategies for MK. Id. In June 2007, psychiatrist, Dr. Mihaela Visula, noted that MK's school reported "adequate behavior" (R. at 274). Furthermore, Dr. Hameed was a non-examining review source whereas Ms. Matthews had an ongoing relationship with MK.  Thus, the Court finds no error in the ALJ's apparent decision to afford more weight to Ms. Matthews finding that MK had generally no problem in the interacting and relating with others (R. at 149). See Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) (internal citations and quotations removed) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."); Social Security Ruling 06-03p, 2006 WL 2329939, at *4-5 (S.S.A) (in

weighing an opinion the ALJ should consider "[h]ow long the source has known and how frequently the source has seen the individual). Moreover, even if Dr. Hameed's opinion of a marked limitation in this domain had been accepted, it would not have resulted in a finding of disability because the ALJ found no other marked limitations. 20 C.F.R. § 416.92a(d) (a child's "impairment(s) is of listing-level severity if [he or she has] 'marked' limitations in two of the domains . . ., or an 'extreme' limitation in one domain"). Thus, the ALJ's failure to offer a specific explanation as to why this particular finding of Dr. Hameed's was rejected, at most amounts to harmless error. See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

The record also contains further evidence that MK was not markedly limited in at least two functional domains. For example, psychiatrist, Dr. Visula, noted in June 2007 that MK's school reports "[we]re significant for good academic performance and adequate behavior" (R. at 274). Dr. Visula also noted that MK's "teachers endorsed 'phenomenal progress during this school year.'" Id. MK also underwent a psychiatric evaluation in March 2009 (R. at 325-28). The examiner noted that there were "no problems in school" and that "[c]urrently, [MK] [wa]s on the honor roll" in her special education classes (R. at 325). The examiner also noted that "[a]s for [MK's] ADHD, at this time there [we]re no functional impairments and [MK] w[ould] not receive any treatment for that" (R. at 328).

Therefore, the ALJ's finding that MK did not functionally equal the Listings is supported by substantial evidence.

## V.Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and free of legal error. Accordingly, it is respectfully recommended that the Commissioner's decision denying disability benefits be AFFIRMED pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: April 29, 2011

### ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);   *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);   *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for

the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York
DATED: April 29, 2011